## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANKLIN ARMORY HOLDINGS, INC., a Nevada Corporation; and FRANKLIN ARMORY INC., a Nevada Corporation,<br><br>         Plaintiffs,<br><br>v.<br><br>AK BUILD TOOLS, LLC, a Nebraska limited liability company, and TODD ALEX RICE d/b/a AK BUILD TOOLS, a sole proprietorship,<br><br>         Defendants. | **Case No. 4:23-CV-3009**<br><br><br><br>**COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Franklin Armory Holdings Inc. and Franklin Armory Inc. (collectively "Plaintiffs" or "Franklin"), by and through their attorneys of record, hereby file this Complaint for Patent Infringement, Trademark Infringement and Federal Unfair Competition against Defendants AK Build Tools, LLC and Todd Alex Rice (d/b/a AK Build Tools and AK Build Tools, Inc.).

### THE PARTIES

1.     Plaintiff Franklin Armory Holdings, Inc. ("FAHI") is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Minden, Nevada.

2.     Like FAHI, Plaintiff Franklin Armory Inc. ("FAI") is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Minden, Nevada.  FAI is wholly-owned subsidiary of FAHI, and specializes in manufacturing firearms and firearm accessories for sporting, military, and law enforcement applications.  FAI also

specializes in selling creative firearms and firearms accessories and parts, including its Binary®

and Binary Firing System® fire control and trigger products.

3.     Franklin is informed and believes, and on that basis alleges that Defendant AK

Build Tools, LLC is or was a Nebraska limited liability corporation with its principal place of

business at 1315 24th Ave., Sidney, Nebraska 69162.

4.     Franklin is informed and believes, and on that basis alleges that Defendant Todd

Alex Rice an individual residing in Sidney, Nebraska, and has done and is doing business as

"AK Build Tools" and "AK Build Tools, Inc." (collectively, "AK Build Tools") with a principal

place of business at 1315 24th Ave., Sidney, Nebraska 69162.

5.     Franklin is further informed and believes, and on that basis alleges that AK Build

Tools, LLC and AK Build Tools have been owned, operated, and controlled and are owned,

operated, and controlled by Defendant Todd Alex Rice.

5.     Franklin is informed and believes, and on and that basis alleges that Defendants

AK Build Tools, LLC, Defendant Todd Alex Rice, or both have owned and controlled the

website, http://www.akbuildtools.com/ at all relevant times alleged herein.  Attached hereto as

**Exhibit A** is a true and correct copy of a December 2, 2021 capture of the landing page for

Defendants' website by the Wayback Machine, a digital archive of the World Wide Web

(https://web.archive.org).  Attached hereto as **Exhibit B** is a true and correct copy of a November

13, 2021 capture of the "Binary Boogie Hook" product page found on Defendants' website,

https://www.akbuildtools.com/index.php?route=product/product&product_id=50, by the

Wayback Machine, a digital archive of the World Wide Web (https://web.archive.org).

5.     Franklin is informed and believes, and on and that basis alleges that AK Build

Tools, Inc., Mr. Rice, or both own and control the Facebook page,

https://www.facebook.com/akbuildtools.  Attached hereto as **Exhibit C** and incorporated herein by reference are true and correct copy of a printout of from this Facebook page.

6.      Franklin is informed and believes, and on that basis alleges that Defendants AK Build Tools, Inc. and Todd Alex Rice (collectively "AK Build Tools" and "Defendants") operate a business that specializes in selling trigger systems for firearms, among other things.  As demonstrated by their webpage and Facebook page, and AK Build Tools makes, uses, sells, and offers to sell the "Binary Boogie Hook" pull-release trigger product ("Boogie Hook"), for use in various firearms, such as civilian legal AK pattern rifles.  *See, e.g*., Exhibits A-C.

## JURISDICTION AND VENUE

6.      The jurisdiction of this Court over the subject matter of this action is predicated, pursuant to 28 U.S.C. §§ 1331 and 1338(a), on the fact that Franklin presents a civil action for patent infringement arising under 35 U.S.C. § 271 et seq.

7.      This Court has personal jurisdiction over Defendants because, on information and belief, they reside in the State of Nebraska and this Judicial District, and because Defendants maintain a physical place of business and regularly do business in Sydney, Nebraska.  Upon information and belief, Defendants offer their products throughout Nebraska and this Judicial District, by shipping, distributing, offering for sale, selling, and advertising its products through its website. *See, e.g*., Exhibits A-C.

8.      The jurisdiction of this Court is also predicated, pursuant to 28 U.S.C. § 1331, on the fact that Franklin presents a civil action arising under the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 et seq.

9.      This action arises out of wrongful acts committed by Defendants in Nebraska and this Judicial District, which acts subject Defendants to the personal jurisdiction of this Court.

Franklin is informed and believes, and based thereon alleges that Defendants specifically target consumers and derives substantial revenue within Nebraska and this District, and expects its actions to have consequences within Nebraska and this District.

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because, among other things, Defendants reside and have transacted business in the District of Nebraska and have committed acts of direct and indirect infringement in the District of Nebraska.  In addition, Defendants have on a continual basis committed the wrongful acts alleged below within this District, in business interactions purposefully elicited by Defendants with or directed to residents of the District, all of which has harmed and continues to harm Franklin within this District.

### THE PATENT-IN-SUIT

11.     The United States, and many jurisdictions within it, regulate the use and possession of fully automatic firearms, sometimes referred to as machine guns.  The National Firearms Act, 26 U.S.C. § 5854(b), defines a "Machine Gun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

12.     The National Firearms Act, as interpreted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives Technology Branch ("BATFE"), defines the *pull* of a trigger as a function, and the *release* of the trigger as a second function.  As a result, a firearm that fires a shot upon the pull of a trigger and fires a second shot upon the release of a trigger may, if designed correctly, fall outside the Act's definition of Machine Gun.  Thus, there exists considerable consumer demand for firearms equipped with this functionality (known as "pull-

release firing") that do not fall under the BATFE's definition of a Machine Gun, particularly in law enforcement, military, and sporting applications.

13.     However, firearms triggers that fired one round with a trigger pull and a second round with a trigger release ("pull-release" triggers) circa 2014 suffered from serious design flaws.  For example, many early designs required the use of multiple selector switches—one to alternate between firing modes and a second to provide safe functionality—in order to enable pull-release firing.  U.S. Patent No. 8,667,881 to Hawbacker, discloses one such implementation. These designs also suffered from the flaw that the lever used to alternate between semi-automatic and pull-release firing was typically located within the trigger guard, increasing the likelihood of accidentally discharging the firearm when switching between firing modes.  Additionally, early pull-release triggers suffered from the flaw that once the trigger was pulled in pull-release firing mode, the user could not place the firearm into safe mode, making it more difficult and dangerous to avoid firing a second shot upon release of the trigger.

14.     Recognizing the need for a new and improved trigger group for semi-automatic firearms with pull-release firing capability, Franklin developed a different and innovative alternative.  Specifically, this novel trigger system incorporates an adjustable disconnector assembly operably connected to a single selector outside the trigger guard, allowing the user to switch between safe, semi-automatic, and pull-release firing mode using that single selector. Franklin has obtained at least nine (9) patents covering various aspects of this innovative concept, including United States Patent No. 10,393,461 ("the '461 patent").

15.     On March 16, 2018, Inventors Jay Jacobson and Ryan Fellows filed U.S. Patent Application No. 15/923,831 ("the '831 Application") claiming certain features of Franklin's innovative pull-release trigger design.  The '831 Application claims priority to U.S. Provisional

Patent Application No. 62/026,621 filed on July 19, 2014.  On August 27, 2019, the United States

Patent Office ("USPTO") duly and legally issued United States Patent No. 10,393,461, entitled

"Trigger Group for Semi-Automatic Firearms."   A true and correct copy of the '461 patent is

attached hereto as **Exhibit D** and is incorporated herein by reference.

      16.     On March 22, 2022, the USPTO duly and legally issued an *Ex Parte*

Reexamination Certificate for the '461 patent where independent claims 1, 7-16, and 22-30 were

determined to be patentable as amended.  The USPTO also determined that dependent claims 2-6

and 17-21 were patentable. A true and correct copy of the reexamined '461 patent is attached

hereto as **Exhibit E** and is incorporated herein by reference.

      17.     FAHI owns all rights, title, and interest in and to the '461 patent.  FAHI has entered

into a license agreement with FAI, giving FAI the right to make, use, offer to sell, and sell products

that practice the inventions claimed by the '461 patent in the United States, and the right to enforce

the '461 patent against infringers and collect damages for all relevant times.

<u>**FRANKLIN AND THE BINARY® AND BINARY FIRING SYSTEM® MARKS**</u>

      18.     Franklin coined its new invention as a "binary" trigger, and filed and obtained

several federally registered trademarks to market products embodying its inventions, including

those claimed by the '461 patent.  Specifically, FAHI is the owner of U.S. Trademark

Registration No. 6,272,568 for the word mark "BINARY" covering the following goods and

services in IC 013 for "Firearms; Component parts for guns; Triggers for firearms" (the

"Binary® Mark").  Franklin first used the Binary® Mark in January 2015 and first used that

mark in commerce in December 2015, and has continuously used the Binary® Mark since that

time.  A true and correct copy of U.S. Trademark Registration No. 6,272,568 is attached hereto

as **Exhibit F**.

19.     FAHI is also the owner of U.S. Trademark Registration No. 6,293,943 for the word mark "BINARY FIRING SYSTEM" covering the following goods and services in IC 013 for "Component parts for guns" (the "Binary Firing System® Mark").  Franklin first used the Binary Firing System® Mark in January 2015 and first used that mark in commerce in September 2015, and has continuously used the Binary Firing System® Mark since that time.  A true and correct copy of U.S. Trademark Registration No. 6,293,943 is attached hereto as **Exhibit G**.

20.     FAI has an exclusive license from FAHI for the Binary® Mark and Binary Firing System® Mark (collectively the "Franklin Marks") to use these marks in the sales, marketing and promotion of at least eleven (11) different pull-release trigger variants.  One of these variations is the Franklin Armory BFSIII® AK-C1 for civilian legal AK pattern rifles.  A true and correct copy of a printout from FAI's website offering this product for sale is attached hereto as **Exhibit H.**

21.     While FAHI and FAI operate independently as parent and subsidiary, there is a unity of control over the use of the Franklin Marks and the nature and quality of the goods or services to which the marks apply.  Likewise, FAHI and FAI have been operated in such a way that they appear to the consuming public as "Franklin Armory" and a single source of Binary® and Binary Firing System® products.

22.     Franklin has spent considerable effort and investment in the Franklin Marks, which as a result have become widely known and are closely identified with Franklin and represent substantial, valuable goodwill.

## DEFENDANTS' INFRINGEMENT OF THE '461 PATENT AND FRANKLIN MARKS

23.     On information and belief, by at least as early as July 2019, Defendants began to

make, use, sell and/or offer for sale a competing pull-release trigger system, which they called the "Binary Boogie Hook," in a manner that substantially infringes the '461 Patent claims. Rather than use a new product name for its pull-release trigger system, Defendants impermissibly used the Binary® Mark in naming their pull-release trigger system. Defendants continue to indiscriminately use the Binary® Mark to promote, advertise, describe and sell their pull-release trigger system via their website. *See, e.g*., Exhibits A-B.

24.     Franklin is informed and believes, and based thereon alleges that since at least July 2019, Defendants have continued to make, use, sell and/or offer for sale, as well as instruct customers to install and use their Boogie Hook pull-release trigger, mainly through the website http://www.akbuildtools.com/. Additionally, Defendants through their website provide purchasers with instructions how to install and use their pull-release trigger product in a manner that infringes the '461 patent. A true and correct copy of the installation instructions provided by Defendants to purchasers is attached hereto as **Exhibit I.**

25.     As stated on Defendants' website, their Boogie Hook pull-release trigger product requires little or no modification by the end-user to install. *See, e.g.,* Exhibit B ("The only mods you should have to do is to the hammer where it catches on the trigger-you will have to take off app. 1mm so the hammer will clear the trigger and of course the selector notch at 21mm from the top rail"); Exhibit L (same); Exhibit I ("Most will drop right in and work, most will need some tuning to make the timing correct. Below are the instructions to do so."). Defendants have directed, instructed, encouraged, and induced customers to complete and install the Boogie Hook pull-release trigger to take advantage of its pull-release firing capabilities.

26.     Franklin is informed and believes, that by selling their pull-release trigger products as a kit to be installed and completed by the consumer, Defendants are able to target

markets where Franklin does not sell its competing products to consumers.  Unlike Defendants, Franklin does not sell its pull-release trigger products to states where the laws are either ambiguous as to the legality or expressly ban the sale of such pull-release triggers.  Franklin also chooses not to sell its pull-release trigger products in certain states, such as California, where the regulation of pull-release triggers currently presents an ambiguous business environment for such products.

27.     After Plaintiffs learned about Defendants' infringing activities, Plaintiffs sent a letter notifying Defendants that their pull-release trigger system infringed the '461 patent and requested that AK Build cease selling and manufacturing that infringing product on or about April 27, 2020.  Defendants summarily denied infringement and refused to cease their infringing activities.  They also rejected Franklin's offer to further discuss the basis of their denial.

28.     After the USPTO issued a reexamination certificate for the '461 patent, Plaintiffs sent another cease and desist letter to Defendants on or about August 29, 2022.  In that letter, Plaintiffs detailed Defendants' direct and indirect infringement of the '461 patent and provided a claim chart illustrating how Defendants' pull-release trigger system infringed claim 1 (as amended) of the '461 patent.  A true and correct copy of the August 29, 2022 letter detailing Defendants' infringement of each and every claim element for claim 1 of the '461 patent is attached hereto as **Exhibit J**.  The letter also identified the trademark registrations for the Franklin Marks and demanded that Defendants cease using the Binary® Mark as part of its product named the "Binary Boogie Hook" and otherwise cease infringing the Franklin Marks.

29.     Defendants ignored Plaintiffs' August 29, 2022 letter, and have continued their infringement of the '461 patent and unauthorized use of the Franklin Marks to market and sell their pull-release trigger product.  A true and correct copy of a printout of the home page of

Defendants' website as it existed on January 6, 2023 is attached hereto as **Exhibit K**.
Defendants' website continues to prominently feature "Binary Boogie Hook" and repeatedly
uses the Binary® Mark to describe and promote this product.  A true and correct copy of a
printout of the infringing "Binary Boogie Hook" product page of Defendants' website as it
existed on January 6, 2023 is attached hereto as **Exhibit L**.  Franklin is informed and believes,
and on that basis alleges that Defendants market their Boogie Hook pull-release trigger to
compete directly with Franklin's products in the market for trigger systems with pull-release
firing capabilities.  As an example, the Defendants' website includes the following statements
within its customer reviews: "Great binary trigger for the money, I've had mine installed in my
Romanian WASR10 for 4 months now, very great product, highly recommend AK guys
purchasing this instead of Fostech or Franklin armory binary trigger."  *See* Exhibits B and L.

30.     Defendants' actions described above constitute unauthorized use of the Franklin
Marks in commerce in connection with the distribution, offering, or promotion of the Defendants
Boogie Hook products and kits and is likely to cause and has caused consumer confusion.
Defendants directly compete with Franklin, and are not using the Franklin Marks for
comparative advertising purposes or to refer to Franklin's products.  Instead, Defendants are
attempting to capitalize on initial interest confusion, and consumer confusion by appropriating
the cachet of the Binary® Mark and/or the Binary Firing System® Mark to sell their pull-release
trigger products.

31.     Franklin is informed and believes, and based thereon alleges that Defendants
continue to extenuate such issues and cause consumer confusion by engaging in the above
described unauthorized use of the Franklin Marks.

**FIRST CAUSE OF ACTION**

**Direct Infringement of U.S. Patent No. 10,393,461 – 35 U.S.C. § 271(a)**

32.     Franklin incorporates and realleges the allegations set forth in paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33.     The Defendants have directly infringed and continue to directly infringe at least claims 1, 2-7, and 9 of the '461 patent by making, using, offering to sell, and selling the completed versions of the Boogie Hook pull-release trigger.  For example, claim 1 of the '461 patent recites:

1. A trigger group for a firearm, the trigger group comprising:

a hammer movable between a cocked position and a striking position;

the hammer being biased toward the striking position;

the hammer having a first hammer hook;

the hammer having a second hammer hook;

a trigger element movable by a user between a rest position and an actuated position;

a movable sear responsive to movement of the trigger element and operable to engage the first hammer hook to restrain the hammer in the cocked position when the trigger element is in the rest position, and in response to pulling the trigger element to the actuated position to release the hammer to the striking position to discharge the firearm;

a selector movable between at least a first position, a second position, and a third position;

a disconnector assembly operably connected to the selector and comprising a plurality of disconnector hooks configured to selectably engage the second hammer hook;

the disconnector assembly operable when the selector is in the first position to retain the hammer in the cocked position in response to release of the trigger element to the rest position subsequent to discharge of the firearm by pulling the trigger element, by engagement of the second hammer hook with one of the plurality of disconnector hooks;

the disconnector assembly operable when the selector is in the second position to release the hammer to the striking position in response to release of the trigger element to the rest position subsequent to discharge of the firearm by pulling the trigger element, by release of the second hammer hook by another one of the plurality of disconnector hooks, such that the firearm

- 11 -

discharges once per cycle of the trigger element when the selector is in the first position, and twice for each rearward-forward motion sequence of the trigger element when the selector is in the second position;

the selector operating when in the third position to prevent discharge of the firearm in response to an application of force on the trigger element; and

wherein the selector is rotatable about a single axis.

Exhibit E, at claim 1.  As detailed in Franklin's April 27, 2020 and August 29, 2022 letters, by making, using, selling, and/or offering to sell the Boogie Hook product, Defendants directly infringe each and every element of claim 1, either directly or by equivalence, in violation of 35 U.S.C. § 271(a).  *See* Exhibit J, at p. 4-17.

34.    Defendants' infringement of the '461 patent has been and continues to be intentional, willful, and without regard to Franklin's rights.  The Defendants gained actual knowledge of the '461 patent and their infringement thereof, including from Franklin's April 27, 2020 and August 29, 2022 letters.  The Defendants also gained actual knowledge of the '461 patent and their infringement thereof through the filing of this Complaint.

35.    Franklin is informed and believes, and on that basis alleges that the Defendants have wrongfully gained profits by virtue of their infringement of the '461 patent.

36.    Franklin has sustained damages as a direct and proximate result of the Defendants' direct infringement of the '461 patent.  The Defendants are, thus, liable to Franklin in an amount that adequately compensates Franklin for the Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37.    The Defendants' infringement of the '461 patent has caused, and continues to cause, irreparable harm to Franklin for which there is no adequate remedy at law.  For example, if the Defendants' infringement is allowed to continue, Franklin will—on information and belief— be forced to compete in the binary trigger market against a cheaper, and in some states an illegal

product, which could harm Franklin's business and reputation to an extent that is not possible to fully quantify.  Further, on information and belief, licensing the Defendants to practice the '461 patent in exchange for a royalty would exacerbate this harm by associating Franklin's brand with the potentially illegal Boogie Hook pull-release trigger.

38.    On information and belief, the Defendants will continue their infringing conduct and will continue to cause irreparable harm to Franklin unless they are enjoined from doing so by this Court.

39.    Upon information and belief, the Defendants' direct infringement of the '461 patent was and is willful and deliberate, entitling Franklin to enhanced damages under 35 U.S.C. § 284 and attorneys' fees and non-taxable costs under 35 U.S.C. § 285.

### SECOND CAUSE OF ACTION

### Indirect Infringement of U.S. Patent No. 10,393,461 – 35 U.S.C. § 271(b) and (c)

40.    Franklin incorporates and realleges the allegations set forth in paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41.    Defendants have actively induced others to infringe the '461 patent in violation of 35 U.S.C. § 271(b), and continue to do so.  As explained above, Defendants offer to sell and sell the Boogie Hook pull-release trigger in kit form.  In doing so, Defendants advertise the trigger's binary firing capabilities.  The Defendants induce their customers to directly infringe at least claims 1, 2-7, and 9 of the '461 patent by, for example, by providing written instructions directing customers on (a) how to modify and install the Boogie Hook pull-release trigger it into a firearm; and (b) what other parts are necessary to enable its advertised binary firing capability. *See, e.g*., Exhibit I.

42.     The Defendants knew or should have known that these activities would cause their customers to directly infringe the '461 patent, including because Franklin repeatedly notified the Defendants of the '461 patent and their infringement thereof.

43.     The Defendants' acts also constitute contributory infringement of at least claims 1, 2-7, and 9 of the '461 patent in violation of 35 U.S.C. § 271(c).  Specifically, upon information and belief, the Boogie Hook pull-release trigger: (a) constitutes a material component of the trigger group covered by the '461 Patent claims; (b) is specially adapted for use in the infringing system, as known by the Defendants; and (c) is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  *See* Exhibits B, I and L. Further, upon information and belief, the Defendants' actual and potential customers would not purchase the Boogie Hook pull-release trigger, which cost many times more than a standard trigger, unless they intended to take advantage of its advertised infringing binary firing functionality.

44.     Upon information and belief, most if not all of the Defendants' customers install the Boogie Hook pull-release trigger as directed by the Defendants and use it within firearms in the United States, thereby directly infringing the asserted claims of the '461 patent.  The Defendants knew or should have known that their offer to sell and sale of the Boogie Hook pull-release trigger would constitute an act of indirect infringement, including because Franklin provided actual notice of the '461 patent and the Defendants' infringement thereof.

45.     Franklin is informed and believes, and on that basis alleges that the Defendants have wrongfully gained profits by virtue of their indirect infringement of the '461 patent.

46.     The aforementioned acts of infringement by the Defendants and their customers have caused damages to Franklin.  The Defendants are therefore liable to Franklin in an amount

that adequately compensates Franklin for the Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.   The Defendants' indirect infringement of the '461 patent has caused, and continues to cause, irreparable harm to Franklin for which there is no adequate remedy at law. For example, if the Defendants' infringement is allowed to continue, Franklin will—on information and belief—be forced to compete in the binary trigger market against a cheaper, and in some states an illegal product, which could harm Franklin's business and reputation to an extent that is not possible to fully quantify.  Further, on information and belief, licensing the Defendants to practice the '461 patent in exchange for a royalty would exacerbate this harm by associating Franklin's brand with the potentially illegal Boogie Hook pull-release trigger.

48.   On information and belief, the Defendants will continue their infringing conduct and will continue to cause irreparable harm to Franklin unless they are enjoined from doing so by this Court.

49.   Upon information and belief, the Defendants' indirect infringement of the '461 patent was and is willful and deliberate, entitling Franklin to enhanced damages under 35 U.S.C. § 284 and attorneys' fees and non-taxable costs under 35 U.S.C. § 285.

### THIRD CAUSE OF ACTION

### Trademark Infringement – 15 U.S.C. § 1114

50.   Franklin incorporates and realleges the allegations set forth in paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51.   Franklin has been actively using the Franklin Marks in interstate commerce since at least as early as 2015.  Franklin's products sold under the Franklin Marks have enjoyed and

continues to enjoy extensive recognition among customers, reviewers and industry professionals in the marketplace.

52.     Franklin currently offers, and has a long and established history of offering innovative and award-winning pull-release firearm trigger products for various types of firearms. Through favorable acceptance and recognition by customers, reviewers and industry professionals, the Franklin Marks have come to be associated in the public with Franklin, have become an asset of substantial value to Franklin, and a symbol of its high quality, industry leading pull-release fire trigger products, and have garnered substantial goodwill.

53.     Franklin's products sold under the Franklin Marks are advertised via print publications, over the Internet through Franklin's website and through third-party websites and blogs, including those of authorized dealers and distributors, and physical signage and product booths at industry and consumer trade shows.

54.     Franklin has expended considerable time, money and effort in advertising and promoting its pull-release fire trigger products under the Franklin Marks among consumers and authorized dealers and distributors.  Consequently, Franklin has developed substantial and exclusive goodwill and reputation in connection with the Franklin Marks for its pull-release fire trigger products.

55.     As a result of these expenditures, combined with substantial sales of Franklin's pull-release fire trigger products under the Franklin Marks, the relevant consuming public and likely customers have come to recognize the Franklin Marks as favorably distinguishing Franklin's pull-release fire trigger products from those of its competitors.

56.     Due to this widespread public use and recognition, the Franklin Marks have become an asset of significant value and goodwill, and a successful indicator of the source of Franklin's pull-release fire trigger products.

57.     Defendants' pull-release fire trigger products and kits directly compete with Franklin's pull-release fire trigger products sold under the Franklin Marks.  The actual and potential customers of Franklin's pull-release fire trigger products offered and sold under the Franklin Marks are the same as those for Defendants' pull-release fire trigger products.

58.     Franklin is informed and believes, and based thereon alleges that Defendants have marketed, advertised, and promoted their pull-release fire trigger products using the Franklin Marks through marketing, advertising, and promotional channels that overlap with those of Franklin.

59.     Franklin is informed and believes, and based thereon alleges that Defendants have actual knowledge of Franklin's rights in the Franklin Marks and are willfully infringing and intentionally adopted and used these marks in commerce without Franklin's consent in connection with the sale, offering for sale, distribution and advertising of competing pull-release fire trigger products.  Defendants' pull-release fire trigger products have been advertised, offered for sale and sold through various means including, without limitation, sales and solicitations through the Internet via Defendants' interactive e-commerce website, Facebook and YouTube.

60.     Defendants' willful, intentional, and unauthorized use of the Franklin Marks in conjunction with the sale and advertising of Defendants' pull-release fire trigger product has caused and is likely to continue to cause confusion, mistake, and deception as to the origin of Defendants' pull-release fire trigger product as well as to the quality of Franklins' pull-release fire trigger products.

61.    Defendants' activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

62.    The injuries and damages sustained by Franklin have been directly and proximately caused by Defendants' wrongful sale, offering for sale, distribution, or advertising of its products in conjunction with their unauthorized use of the Franklin Marks.  Specifically, Franklin has been damaged in an amount according to proof at trial.

63.    Defendants' acts are likely to continue, and the award of money damages alone will not adequately compensate Franklin.  By their unauthorized use of the Franklin Marks and refusal to cease such use, Defendants have caused, and will continue to cause irreparable harm, damages, and injury to Franklin.  Franklin's injuries will continue unless restrained by order of this Court.  Accordingly, Franklin is entitled to preliminary and permanent injunctive relief.

## FOURTH CAUSE OF ACTION

### Unfair Competition – 15 U.S.C. § 1125(a)

64.    Franklin incorporates and realleges the allegations set forth in paragraphs 1 through 63 of this complaint as though fully set forth herein.

65.    Defendants' conduct described and alleged in this Complaint constitutes unfair competition and fraudulent business practices in violation of 15 U.S.C. § 1125.  Defendants are deliberately, intentionally, and unlawfully exploiting the Franklin Marks and consumer goodwill for the benefit of Defendants' pull-release fire trigger products.

66.    Defendants' use of the Franklin Marks in conjunction with their business constitutes the use of a word, term, name, or any combination thereof, that is likely to cause confusion, mistake, or deception as to the affiliation, connection, origin, sponsorship, approval,

and/or association of Defendants and their pull-release fire trigger products, within the meaning of 15 U.S.C. § 1125(a)(1).

67.     In addition, Defendants' use of the Franklin Mark constitutes a commercial use that causes actual and/or likely dilution of the distinctive quality of the Franklin Marks by lessening the capacity of those marks to identify Franklin, and distinguish its pull-release fire trigger products.  Defendants knowingly traded on Franklin's reputation and goodwill after the Franklin Marks had become well known.

68.     As a direct and proximate result of Defendants' acts and misconduct, Franklin is informed and believes, and thereon alleges, that customers and prospective customers have been confused and misled, deceived and mistaken as to the source or sponsorship of Defendants' inferior pull-release fire trigger products, and have been deterred from purchasing Franklin's pull-release fire trigger products, in disruption of Franklin's business activities.

69.     Franklin has therefore been damaged and is likely to suffer further damage in an amount to be proven at trial, but in any event, an amount in excess of the minimum jurisdiction requirement of this Court.  In particular, Franklin is entitled to, without limitation, damages for its loss of sales and goodwill, as well as recovery of any and all profit derived by Defendants through their wrongful acts in an amount according to proof at trial.

70.     As Defendants' wrongful acts are likely to continue, the award of money damages alone will not adequately compensate Franklin.  By its use of the Franklin Marks, Defendants have caused, and will continue to cause irreparable harm, damages, and injury to Franklin.  Franklin's injuries will continue unless restrained by order of this Court.  Accordingly, Franklin is entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      A judgment that the '461 patent is valid and enforceable;

2.      A judgment that Defendants have infringed one or more claims of the '461 patent;

3.      An order and judgment enjoining Defendants, and any officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, from further acts of infringement of the '461 patent;

4.      A judgment awarding Franklin all damages adequate to compensate it for Defendants' infringement, and in no event less than a reasonable royalty for Defendants' acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

5.      A judgment awarding Franklin all damages, including treble damages, based on any infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

6.      A judgment that this is an exceptional case and an award to Franklin of its costs and reasonable attorneys' fees incurred in this action, as provided by 35 U.S.C. § 285;

7.      For compensatory damages in an amount to be proven at trial for the infringement of Plaintiffs' Franklin Marks, and to be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117(a);

8.      For an award of all profits heretofore realized by Defendants during their infringing use of the Franklin Marks pursuant to 15 U.S.C. § 1117(a) and other applicable laws and statutes;

9.      For reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117 as this is an exceptional case and/or 18 U.S.C. § 2520(b)(3);

10.     Disgorgement and restitution of Defendants' ill-gotten gains;

11.     For a preliminary and permanent injunction restraining Defendants, their officers, members, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them temporarily, preliminarily, and permanently enjoined and restrained from use of the Franklin Marks;

12.     For interest as allowed by law;

13.     For cost of suit herein incurred; and

14.     For such other and further relief as this Court may deem proper.

## **DEMAND FOR JURY TRIAL AND TRIAL LOCATION**

Plaintiffs Franklin Armory Holdings Inc. and Franklin Armory Inc. hereby demand trial by jury for all causes of action presented herein pursuant to Fed. R. Civ. P. 38, and request that the trial take place in Lincoln, Nebraska.


Dated:  January 27, 2023                             Respectfully submitted,


By: */s/ Trenton D. Tanner*
     Trenton D. Tanner (#26660)
     HILGERS GRABEN PLLC
     1320 Lincoln Mall, Suite 200
     Lincoln, NE 68508
     Telephone: (402) 218-2106
     Facsimile: (402) 413-1880
     ttanner@hilgersgraben.com

     *Counsel for Plaintiffs*
     FRANKLIN ARMORY HOLDINGS, INC.
     and FRANKLIN ARMORY INC.